Nash, J.
 

 This was an indictment against the defendant for removing a fence around the cultivated lands of the prosecutor. And the proof was, that the prosecutor had cultivated the land, or field, in question, under a fence, in the year 1849, and in the latter part of the year sold the land to one Arthur A. Robinson, and rented the land from said Robinson for the year 1850. That, while there was nothing actually growing in the field, and before the ordinary time for pitching the crop, which the prosecutor had rented the land on purpose to make, the defendant removed some 50 or 100 yards of the fence surrounding the field; and the prosecutor stated, that he was thereby prevented from making a crop. The defendant contended, that it was necessary to his conviction, that there should be something actually growing in the field, at the time of
 
 *37
 
 the removal of the fence; but the Court being of a different opinion, and having charged accordingly, the Jury found the defendant guilty, and a rule for a new trial being discharged, and judgment pronounced on the defendant, he prayed, and obtained an appeal.
 

 The Act, under which the defendant was indicted, declares, “ that, if any person or persons shall unlawfully burn, destroy, or remove any fence, wall, or other inclo-suve, or any part thereof, surrounding, or about any yard, garden, or
 
 cultivated grounds,
 
 &c., he, she or they shall be deemed guilty of a “ misdemeanor,1’ &c. Ired. Digested Manual, 158.- — the Act of ’40, ch. 70.” The defendant did remove a fence, .or part of it, from around a piece of ground in possession of the prosecutor, and which he had cultivated in the year 1849, and which, as stated in the case, lie intended to cultivate in 1850. There was nothing actually growing in the field at the time of the removal, and that rvas done before the crop was pitched. The objection, on the part of the defendant, is, that thei’e was no crop growing in the field at the time the alleged offence was committed. Neither the language nor the spirit of the Act justify this restricted construction. The word “ cultivated” may refer either to past or present lime. A field,
 
 on
 
 which a crop of wheat is growing, is a cultivated field, although not a stroke of labor may have been done in it, since the seed was put into the ground ; and it is a cultivated field after the crop is removed. It is, strictly, a cultivated piece of ground. Mr, Bailey, in his Dictionary, defines ‘cultivate’ to be, “To lili, or husband the ground — to forward the product of the earth, by general industry.” Here the land had been prepared for tillage^ by being cleared, and fenced in, and a crop had actually been raised upon it the year preceding. After a crop is
 
 *38
 
 removed from a field, it is often very important to the owner as a pasture. Can it be presumed that the Legislature intended to withdraw such a field from its protection ? Our best farmers have a rotation of crops, and, after they have gone through the cycle, rest the land, by letting it lie in fallow; where, so resting, it is in course of husbandry, and is cultivated ground,' though no crop be then on it, and the owner has no intention of raising anything on it at that time. And while lying in fallow, it is, according to good husbandly, important it should not be trodden by beasts of any kind. To this end, the fences must be kept up. That the Legislature did not have the intention attributed to them, is further evidenced, in the difference in the language, in legislating on another subject, but connected with this. In making fences indictable, if not of the height directed by the Act, they sajq “ that every planter shall make a sufficient fence around his cleared ground, under cultivation,” &c. Rev. Stat. ch 48, 5i, and by the 34th elf. s. 42, it is declared, “ that all persons neglecting to keep up and repair their fences, during crop time, required by the Act concerning fences, &c., “ shall be liable to be indicted,” These Statutes, though originally passed at different sessions, yet being revised and re-enacted at the same session, are considered, in law, but one Act. The 48th ch. simply subjects the person offending against its provisions,
 
 to
 
 a civil remedy, in favor of the individual whose stock may be injured; the 34th ch. makes the omission to keep up a fence at a particular period, during crop time,” a criminal offence With these two Acts before them, it cannot be supposed the Legislature intended, by the words “cultivated grounds,” only such as had crops growing on them. Rut the grounds, to come within this meaning, must be enclosed, preparatory to being cultivated or for some purpose connected with its husbandry. To
 
 *39
 
 fences surrounding land not- cleared, or intended to be cleared, the Act does not extend. Why they should not enjoy the same protection, 1 cannot well see. Every man has a right to enclose his own wood-land, for the range of his own stock, to prevent them from straying off and mingling with others, and for the purpose of excluding the stock of others, and he is entitled to have it protected by the law. The Legislature might have supposed the right to compensation was a sufficient safeguard ; but while extending the doctrine of malicious mischief, to fences around cultivated grounds, it is not easy to perceive why it was so restricted.
 

 Pee Curiam. Judgment affirmed.