Two actions between same parties pending in the Superior Court of Camden County were consolidated and heard upon motion for an injunction to the hearing by Allen, J., who dissolved the restraining order theretofore granted, and refused to continue the same to final hearing. The plaintiff appealed.
It is admitted for the purposes of this appeal that the plaintiff is the owner of Lots 2, 3, and 12, and the defendant of Nos. 7 and 8 in the division of the lands known as the New Lebanon estate; and it also appears that defendant has purchased an interest in Lots 1 and 4 of said division. It also appears that the defendant claimed the Allen Swamp, lying south of the New Lebanon lands, in which defendant had cut certain timber before the beginning of this (164) suit.
Neither the Cedar Works Corporation nor its codefendant and subsidary [subsidiary], the Dismal Swamp Railroad Company, are common carriers, and they do not assert any right of eminent domain.
All of the evidence shows, plaintiff's affidavits being uncontradicted in this respect, that defendants were constructing and operating railroads and carrying away timber over plaintiff's land, occupying the camps thereon and cutting out trees and undergrowth along the roadways.
The defendant contends that the injunction was properly dissolved, for five reasons:
1. Because the complaint fails to allege the insolvency of the defendant.
We disagree with counsel that plaintiff's allegations do not bring its case within the spirit of section 807 of the Revisal. That act distinctly relieves the plaintiff in an action to enjoin a trespass upon land from alleging insolvency "when the trespass complained of is continuous in its nature, or is the cutting or destruction of timber trees." Lumber Co. v.Cedar Co., 142 N.C. 417.
The complaint in this case alleges both species of trespass, and an appropriation of a part of plaintiff's property, without authority, for the purpose of operating a steam railroad over it. Such trespasses as those alleged would have been enjoined at common law without the aid of the statute. Gause v. Perkins, 47 N.C. 221; Tise v. Whitaker, 144 N.C. 511.
Even a railway corporation, a common carrier possessing the power of eminent domain, may be enjoined from an extension of its track *Page 138 
unauthorized by its charter. The right to enjoin in such cases does not depend upon the insolvency of the corporation, but the remedy is given because of the extraordinary character of the act sought to be enjoined. 1 High on Injunctions, sec. 599; People v. R. R., 45 Barb., 63.
It would be a most extraordinary destruction of the rights of property if a private corporation, possessing no power of eminent domain, could seize the lands of another, to which it had no semblance of title, (165) and appropriate them to its own use, simply because it was able to respond in damages. This contention of the defendants is, in our opinion, without support in reason or authority.
2. Because the defendant had the permission of the plaintiff to remove its timber from the Allen Swamp, and this permission carries with it the power to remove it by the usual and ordinary methods.
The only foundation for this claim is a letter from C. I. Millard, written to W. J. Parrish, general manager of defendant, in reference to the litigation concerning Allen Swamp (no part of the New Lebanon lands), in which this expression is used: "Should there be any desire on your part to remove the timber which you have cut, you will not find us unwilling to give our permission."
We are cited to no authority by defendant tending to support this contention. Assuming that the letter was authorized by plaintiff, its language is too indefinite to convey any right or estate in lands, much less a right of way for a railroad across plaintiff's New Lebanon lands, or even to be effective by way of an estoppel.
3. The defendant rests its third claim upon an order at Spring Term, 1911, made by Ward, J., in a suit in the Superior Court of Gates County, wherein this defendant was plaintiff, and this plaintiff was defendant, in which is this paragraph: "It is further ordered and adjudged that each party shall have the right to remove such timber as it has already cut on said land."
It is admitted that the suit in which this order was made concerned the Allen Swamp only, and had no connection with the New Lebanon lands. The record in that case shows that both parties claimed title to the Allen Swamp and had cut timber in it at the time the order was made. While the learned counsel for defendant in their brief profess to rely on this order "above and beyond all other contentions," they cite no authority and give no substantial reason why such order can reasonably be construed to include the grant of a right of way across lands not connected in any way with the subject of litigation.
Both parties had cut timber in the Allen Swamp, the title to (166) which was in litigation, and the order was intended to give to each party the right to remove such timber as it had already *Page 139 
cut from the swamp, and does not purport to go beyond that. The order does not undertake to provide any means of transportation for the timber after it is removed from the confines of the swamp.
4. It is again contended that the partition proceedings of the New Lebanon estates gives defendant authority by virtue of its ownership of Lots 7 and 8 to construct and operate its railroad across plaintiff's Lots 2, 3, and 12.
The facts are that in the year 1817 the New Lebanon estate, a large tract of land in Camden County, was partitioned among the several tenants in common. The Cross Canal runs through this land eastwardly and is tributary to the Dismal Swamp Canal. It was used to float juniper logs down to the Dismal Swamp Canal, a navigable waterway, and in order that this use of the Cross Canal might be preserved, it was provided in the division that "It will be a conveniency in carting to the Cross Canal, or Crooked Ditch, for one proprietor to cross the land of another; therefore every proprietor is to have the free privilege of carting across another proprietor's share, but not to have any privilege to cut any timber except for the making or repair of the road." This provision was not incorporated nor the privilege specially reserved or granted in any of the subsequent conveyances under which either party derives its title in severalty to parts or shares of said land.
It is contended by defendant that the word "carting" was used by the commissioners who made partition of the New Lebanon estate in a broad or generic sense, and comprehended any method of carrying off timber which might thereafter be generally adopted.
In 1817 steam railroads were unknown, and we cannot suppose that transporting timber by such instrumentality could have been in contemplation of the commissioners who divided the lands. Even in this day and generation a grant of a cartway would hardly be construed to include a right of way for a railroad.
The use of a cartway may be general and enjoyed by a neighborhood, while that of a railroad is of necessity exclusive and (167) confined to the proprietor operating it.
We think that an examination of the map and of the division itself clears up any doubt as to the meaning and purpose of the commissioners. They evidently intended that the proprietors, who theretofore owned the land in common, should thereafter have the same access to the Cross Canal or Crooked Ditch as they before enjoyed, and the right to use it was thereby made appurtenant to each tract instead of in gross.
As is well said in the plaintiff's brief: "If in place of the Cross Canal there had been a public road running through the land, with the right reserved to each proprietor, in severalty, to cross the land of another, *Page 140 
`as a conveniency in carting' to the public road, no different principle would be invoked; and yet it is difficult to imagine that this would confer the right of building a private railroad and operating log trains thereon in order to cart timber from Gates County to Virginia, in a direction and manner opposed to use of the public road altogether."
5. The last reliance of the defendant is upon a "way of necessity."
We think the defendant could not avail itself of any such plea without setting it up in an answer and setting out the necessary facts.
To plead a way by necessity in general terms will not suffice. Bullardv. Harrison, 4 M. Sel., 387.
But we will consider it as fully and sufficiently pleaded and undertake to show that the defendant cannot justify under it.
What constitutes a way by necessity is not very clearly defined or agreed upon by the early sages of the law. Sergeant Williams was of opinion that there is no such thing as a right of way by necessity except when it is pleaded by way of prescription or grant. Pomfret v. Ricroft, Saund, 323, note 6.
Chancellor Kent agrees with Sergeant Williams, and says "that it places the doctrine upon a reasonable foundation, and one consistent with the general principles of the law." 3 Kent Com., 341.
This learned judge and commentator says: "A right of way (168) may arise from necessity in several respects. Thus, if a man sells land to another which is wholly surrounded by his own land, in this case the purchaser is entitled to a right of way over the other's ground, to arrive at his own land. The way is a necessary incident to the grant, and without which the grant would be useless" 3 Kent Com. (13 Ed.), p. 421.
What is meant by the term "way by necessity" is laid down by Woolrych as follows: "All the authorities support the doctrine that in the case of a grant of land without a reservation of any way, a way by necessity will pass as incident to the grant." Treatise on Ways, p. 21.
This way of necessity as known to the common law arises only by implication in favor of grantees.
Since the way is founded on a grant, it can arise only between grantor and grantee. No way of necessity can be presumed or acquired over the land of a stranger. It does not arise where there is no privity of title. Thrumpv. McDonnell, 120 Ala. 200.
Without privity of estate and unity of ownership there will be no way of necessity. Ellis v. Blue Mount. Assn., 69 N. H., 385; 42 L.R.A., 570.
Powers v. Hefferman, 122 Am. State Reports, 210, Note C, where the *Page 141 
authorities are collected; Cooper v. Maupin, 35 Am. Dec., 464, and notes;Woolridge v. Coughlin, 46 W. Va. 345.
There is nothing in the record to show that there is any privity of estate between the plaintiff and defendant in respect to the Allen Swamp or any other land from which defendant is removing the timber. Even if that were so, there is nothing to show that defendant has no other possible way to remove the timber.
Even where there is a grant from which the law may possibly imply a way of necessity, a mere inconvenience is not enough to justify it. It is necessity, not inconvenience, that gives the way. Pettingill v. Porter, 85 Am. Dec., 676; Powers v. Hefferman, 122 Am. State Reports, 211, Note D.
So far as we can see, the case cited by defendant in support of this contention, Lumber Co. v. Hines Bros., 127 N.C. 130, has no bearing upon this question, as it was a controversy over the location of an unlocated floating right of way granted to plaintiff. The doctrine (169) of a way by necessity does not appear to be discussed in the opinion.
The right to establish cartways, tramways, etc., over the lands of another, when no such right arises by implication of law, as herein pointed out, is in North Carolina regulated by statute, and one who desires to cross the land of another for the purpose of removing his timber, or for other purposes, must follow the statute or else purchase the right. Revisal, sec. 2686.
The General Assembly has attempted to clothe private lumber railways with the power of eminent domain and the right to condemn property for a very limited period, impelled to do so by the immense growth of the timber industry and the consequent necessity for the operation of steam railways in such enterprises.
But the Court has held such legislation beyond the power of the General Assembly, upon the principle that private property can only be taken for a public use, and not for private gain. Cozard v. Hardwood Co., 139 N.C. 284.
In concluding the opinion of the Court in that case, Mr. Justice Connor
uses the following expressive language:
"While, as found by his Honor, it is reasonable and even necessary to the successful operation of defendant's enterprise that they carry their timber over the plaintiff's land to reach the markets, and while there may be no injustice to him in permitting them to do so, and while his opposition may be either sentimental or selfish, yet the courts may not violate or weaken a fundamental principle upon the strict observance and enforcement of which the security of all private property, *Page 142 
so necessary to the safety of the citizen, is dependent. The guaranties upon which the security of private property is dependent are closely allied, and always associated with those securing life and liberty. Where one is invaded, the security of the other is weakened."
We are of opinion, upon a review of the record, that the defendants have shown no semblance of right to operate their railroad over plaintiff's land, or to cut and remove timber therefrom, and that plaintiff is entitled to an injunction as prayed. The cause is remanded to the Superior Court of Camden County with directions to the judge (170) resident or the judge riding the district to issue the injunction until the final hearing, as prayed, upon the plaintiff giving the undertaking required by law.
Reversed.
Cited: Foster v. Carrier, 161 N.C. 474; Sutton v. Sutton, ib., 667;Lumber Co. v. Cedar Works, 165 N.C. 83; Combs v. Comrs., 170 N.C. 91.