W. R. COMBS ET ALS. v. COUNTY COMMISSIONERS ET ALS.

(Filed 17 November, 1915.)

1. **Public Roads—Taking of Soil—Interpretation of Statutes.**

Sec. 11, ch. 581, Laws of 1899, confers power only to enter upon uncultivated lands for the purpose of procuring soil to use in the construction of public roads, and entry upon cultivated lands for that purpose is without authority of law.

2. **Same—Uncultivated Lands.**

Lands are cultivated within the meaning of section 11, ch. 581, Laws of 1899, the soil of which may not be taken for use on the public roads,

when at the time the soil therefrom is proposed to be taken they are covered with stubble from the crops harvested therefrom, and which have been in cultivation for a term of years and intended by the owner for continued cultivation; and the fact that at the time in question they were not under immediate cultivation does not affect the matter.

**3. Same—Equity—Injunction.**

While equity will not restrain a mere trespass if due compensation can be awarded for the injury, it will do so, in proper instances, where it is continuous in its nature, or if it will destroy or seriously impair the property and prevent its enjoyment as it has been used. Hence, when the owner of lands has been cultivating them, and by unlawfully taking the topsoil thereof for use on public roads it will destroy the value of the lands for the making of the crops, equity will enjoin the continuance of the unlawul act.

APPEAL by defendant from *Cline, J.,* at chambers, in WINSTON-SALEM.

Action instituted by the plaintiffs, abutting landowners, on a public highway leading from Leaksville-Spray to Reidsville. The defendants, the county commissioners and the superintendent of roads of Rockingham County, are undertaking in their official capacity to permanently improve said road by topsoiling. The plaintiffs sued out a restraining order, the grounds upon which they ask relief being that they are citizens of the county of Rockingham and own lands abutting on said highway near the town of Leaksville in said county, and that the defendants are taking, and about to take, certain topsoil from their lands for the purpose of improving said public highway; that the defendants have no right to enter upon their lands and take said topsoil, for the reason that the statute, section 11, ch. 581, of the Public Laws of 1899, under which they are acting, does not authorize them to do so, because the said section only authorizes the taking of soil from uncultivated lands. They allege that their lands are cultivated lands within the meaning of said section, and, therefore, the defendants have no right to take the same for road purposes. The defendants answer and allege that the board of county commissioners of Rockingham County have passed a resolution directing the superintendent of roads to do this identical work, and have directed him to take this topsoil; that they have a right to take the same for the reason that the lands of the plaintiffs at this point are not cultivated lands within the meaning of said section, but that they are uncultivated lands, not being in actual cultivation at this time.

Upon the hearing his Honor rendered the following judgment, containing his findings of fact, which are fully supported by the affidavits:

This cause coming on to be heard by the undersigned at chambers in Winston-Salem, N. C., 7 October, 1915 (the hearing having been by consent continued from 4 October, 1915), upon the motion of the plaintiff to continue the temporary restraining order to the hearing, at which time and place the parties appeared by counsel and in person, and after con-

sidering the pleadings and the affidavits filed, the undersigned, in addition to the admissions contained in such pleadings, makes the following findings of fact, to wit:

1. That there is a public highway between the towns of Leaksville-Spray and Reidsville, in Rockingham County, a distance of thirteen miles, which is a much-used road. That said road was laid out and established several years prior to this litigation, and has been used during that time as one of the public roads of said county, but has never been topsoiled or sand-clayed; that at a meeting of the county commissioners held on Monday, 7 June, 1915, said board of commissioners adopted a resolution reciting that in their judgment permanent roads are a public necessity and that the aforesaid road be sand-clayed and topsoiled.

2. That the improvement of the road as aforesaid, by topsoiling, is a public necessity, the court not reviewing the judgment of the commissioners.

3. That the plaintiff Combs is the owner of a tract of land containing seventy-two (72) acres, abutting on said road for a distance of one-half a mile. That, of said seventy-two acres, ten acres, which lie adjoining and adjacent to said road, is a gray topsoil, peculiarly adapted to the cultivation of bright tobacco, and that he has only ten acres of this type of land in his entire tract.

4. That the said commissioners desire to take soil from about three acres of the land in question, and it is proposed to use said soil upon the road abutting the land of Combs for one-fourth of a mile, and for an additional one-fourth of a mile to the Dan River bridge, said road for the last named one-fourth of a mile abutting the lands of other persons.

5. That the aforesaid ten acres of land has been cultivated by rotation of crops annually for about fifteen years, and that last year said land was in wheat, and is now in stubble, and plaintiff Combs proposes to put it in tobacco next season, and that said land is cultivated land.

6. That the defendant went upon said land and began taking off the topsoil, to be used in topsoiling the said road, and had removed the greater portion of the topsoil from a half acre, and were intending to use the topsoil from an additional acreage of approximately two and one-half acres, when the temporary restraining order was issued and served.

7. That there are other lands in the same neighborhood that have a topsoil suitable for this purpose, but the lands of the plaintiff Combs are the most convenient lands that could be reached for improving that part of the road in question, and the additional distance of the land from other lands, even if defendants could take the topsoil there, would considerably increase the expense of the work.

8. That to remove the aforesaid topsoil from the land in question will render it unfit for cultivation of tobacco of the type that has been theretofore raised on it.

It is thereupon ordered and adjudged that, so far as the plaintiff W. R. Combs is concerned, that the restraining order heretofore issued be continued to the hearing; and that as to the plaintiffs Carter and Roberts the same is dismissed without prejudice to their right to apply in the future for a restraining order, should they be so advised.

E. B. CLINE, *Judge.*

The defendants excepted and appealed.

*J. R. Joyce, J. M. Sharp. and Manly, Hendren & Womble for plaintiffs.*
*P. W. Glidewell and Ira R. Humphreys for defendants.*

ALLEN, J. The power conferred upon the defendants by the statute under which they are acting is to enter upon *uncultivated lands* for the purpose of procuring soil to use in the construction of roads, and if the land of the plaintiff is cultivated land they are without authority of law.

The question has been settled against the contention of the defendants upon the facts found by his Honor in three cases in our reports (*S. v. Allen,* 35 N. C., 36; *S. v. McMinn,* 81 N. C., 585; *S. v. Campbell,* 133 N. C., 640), and we see no reason for departing from the definition there given to the term "cultivated field," which is "that where a piece or tract of land has been cleared and fenced and cultivated, or proposed to be cultivated, and is kept and used for cultivation according to the ordinary course of husbandry, although nothing may be growing within the inclosure at the time of the trespass, it is a cultivated field within the meaning of the statute."

If the defendants have no right to enter upon the lands of the plaintiff, do their acts, present and threatened, in going upon the land and taking the topsoil therefrom, thereby destroying it for the purposes for which it has been used, constitute irreparable injury?

It is true that equity will not ordinarily restrain a mere trespass, if due compensation can be awarded for the injury, but if the trespass is continuous in its nature, or if it will destroy or seriously impair the property and prevent its enjoyment as it has been used, equity will interfere.

"Equity will not interfere to restrain a trespasser simply because he is a trespasser. The injury complained of must be ruinous to the property in the manner in which it has been enjoyed, and such as permanently to impair its future enjoyment." Bispham's Eq., sec. 436.

In *Cowper v. Baker,* 17 Ves., 128, *Lord Eldon* restrained the taking

of certain stones necessary in the manufacture of cement "because it was taking away the substance of the inheritance." Bisph., sec. 436.

"Nor will equity interfere to restrain a trespasser simply because he is a trespasser, but only because the injury threatened is ruinous to the property in the manner in which it has been enjoyed, and will permanently impair its future enjoyment." 1 High Inj., sec. 701.

"The rule is well settled that when the injury goes to the destruction of the inheritance, it is irreparable, and the trespass will be enjoined. The injury may consist in the destruction of that on which the value of the estate depends, or in the destruction of the estate in the character in which it has been enjoyed. So threatened occupation by permanent structures may be enjoined. The injury would be irreparable in its nature. . . . When municipal authorities threaten to enter upon and take permanent possession of land for a public use without having acquired the right by complying with the statutory requirements, an injunction may be granted in part and refused in part." 22 Cyc., 831 *et seq.*

"In the application of this restriction, much difficulty occurs in defining what injury is irreparable. The word means that which cannot be repaired, retrieved, put back again, atoned for." *Gause v. Perkins,* 56 N. C., 179.

We may conclude with the statement of the Court in *Lumber Co. v. Cedar Works,* 158 N. C., 161, which is equally applicable to the defendants:

"It would be a most extraordinary destruction of the rights of property if a private corporation possessing no power of eminent domain could seize the lands of another to which it had no semblance of title and appropriate them to its own use simply because it was able to respond in damages. This contention of the defendants is, in our opinion, without support in reason or authority."

Being, therefore, of the opinion that the land of the plaintiff is not an uncultivated field, and that the plaintiff is entitled to injunctive relief, the judgment is

Affirmed.